FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 17, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ELIZABTH B.,[1] | No. 1:25-CV-03093-RLP |
| Plaintiff, | |
| v. | ORDER AFFIRMING THE COMMISSIONER'S DECISION |
| FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT is an appeal from an Administrative Law Judge (ALJ) final decision denying disability income benefits under Title II of the Social Security Act. ECF No. 12. The Court considered the matter without oral argument. For the reasons discussed below, the Court concludes the ALJ did not commit harmful legal error in evaluating medical opinion evidence or Ms. B.'s symptom testimony. Therefore, Ms. B.'s brief, ECF No. 12, is denied and the Commissioner's brief, ECF No. 14, is granted.

---

[1] Plaintiff's first name and last initial are used to protect her privacy.

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 1

BACKGROUND

The facts of the case are set forth in the administrative hearings and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and therefore require only a brief summary.

Ms. B. was born in 1979. Tr. 303. She has a bachelor's degree in nursing and relevant past work as a nurse assistant and general duty nurse. Tr. 28, 468, 544. Ms. B. alleges that she underwent back surgery in 2012 and her back pain became progressively worse over time. Tr. 112.

On June 29, 2017, Ms. B. protectively filed an application for benefits under Title II of the Social Security Act, alleging an onset date of April 22, 2016. Tr. 303-09. She claimed that her back pain, left foot drop, and mental limitations rendered her unable to perform any job. Tr. 156, 303-09. The application was denied initially and upon reconsideration. Tr. 156-62, 164-70. Ms. B. thereafter filed a request for a hearing. Tr. 171-72. A video hearing was held on January 21, 2020. Tr. 35-52.

On January 31, 2020, the ALJ issued a fully favorable decision. Tr. 108-116. The ALJ determined that Ms. B. had been under a disability as defined in the Social Security Act since April 22, 2016, the alleged onset date. Tr. 114. The ALJ also determined that medical improvement was expected with appropriate treatment and recommended a continuing disability review in 24 months. *Id*.

Following a mandatory review, in a decision dated January 30, 2023, it was determined that Ms. B.'s impairments had improved and she was no longer disabled.

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 2

Tr. 119, 218-221. Ms. B. filed an appeal. Tr. 131. On July 17, 2023, after a hearing officer reviewed her file, Ms. B. was notified of the determination that she was no longer entitled to benefits because her impairments had improved. Tr. 143, 227-37.

Ms. B. filed a request for a hearing. Tr. 256-76. A telephonic hearing was held on June 3, 2024. Tr. 53-79.

On June 27, 2024, the ALJ issued an unfavorable decision. Tr. 14-34. The Appeals Council denied a request for review. Tr. 1-6. The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

This Court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). If the evidence in the record "is susceptible to more than one rational interpretation, [the Court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§ 404.1502(a), 416.902(a) (citation omitted).

Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 3

omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10, 129 S.Ct. 1696 (2009).

FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, if the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 4

impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must assess the claimant's residual functional capacity (RFC), which is the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If not, the analysis proceeds to step five and the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 5

in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

ALJ'S FINDINGS

At step one, the ALJ found Ms. B. has not engaged in substantial gainful activity since January 31, 2020, the date of the most recent favorable medical decision finding her to be disabled. Tr. 19. At step two, the ALJ found Ms. B. has the following severe impairments: failed laminectomy syndrome, degenerative disc disease, major depressive disorder, post-traumatic stress disorder, and anxiety disorder. Tr. 23. The ALJ rejected Ms. B.'s claim that her hypothyroidism was a severe impairment. *Id.*

At step three, the ALJ found Ms. B does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 19-20. The ALJ determined medical improvement occurred on January 30, 2023. Tr. 22.

With respect to the RFC, the ALJ found Ms. B. has the RFC to perform light work with the following exceptions:

> she can frequently climb ramps and stairs but never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She can perform simple, routine tasks, and can tolerate occasional interaction with coworkers, supervisors, and the general public. She requires regular work breaks at 2-hour intervals. She can tolerate occasional changes to work routines and work processes.

Tr. 23.

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 6

The ALJ determined Ms. B.'s medical improvement is related to the ability to work because it resulted in an increase in her RFC. Tr. 23. Based on the impairments present at the time of the comparison point decision (CPD), the ALJ found the residual functional capacity Ms. B has had since January 30, 2023 is less restrictive than the one she had at the time of the CPD.[2] *Id*.

At step four, the ALJ found that since January 30, 2023, Ms. B. has been unable to perform past relevant work as a nurse assistant or general duty nurse. Tr. 28. At step five, the ALJ found Ms. B. capable of performing jobs that exist in significant numbers in the national economy, specifically as a marker, routing clerk, and production assembler. Tr. 29. Based on these adverse findings, the ALJ determined Ms. B. has not been under a disability, as defined in the Social Security Act, from January 30, 2023, through the date of the decision. *Id*.

## ANALYSIS

Ms. B.'s assignments of error pertain to the ALJ's assessment of two medical opinions and her own symptom testimony. These appear to pertain to the ALJ's analysis of Ms. B.'s RFC. Ms. B. also challenges the ALJ's hypothetical at the final step of the sequential analysis.

---

[2] The ALJ notes the most recent favorable medical decision finding Ms. B. disabled, known as the "comparison point decision," is the decision dated January 31, 2020. Tr. 19.

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 7

A.    Medical Opinions

Ms. B. contends the ALJ failed to properly evaluate the opinions of her consultative examiners, Ms. Washington and Ms. Ketchel. ECF No. 12 at 6-14. The regulations provide that an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c, 416.920c. Supportability and consistency are the most important factors in evaluating the persuasiveness of medical opinions and prior administrative findings, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may, but is not required, to explain how other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *see* 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

*1. Marquetta Washington, ARNP*

On January 3, 2023, Ms. Washington conducted a physical functional evaluation of Ms. B. and opined that she is limited to less than a light level of exertion due to standing and walking limitations. Tr. 547-49. The ALJ found this opinion to be partially persuasive. Tr. 26. The ALJ rejected Ms. Washington's opinion related to Ms. B.'s standing and walking limitations as inconsistent with other physical examination reports and medical evidence in the record, and unsupported by Ms. Washington's own examination findings. *Id*.

Ms. B. asserts it was improper for the ALJ to reject some of Ms. Washington's assessed limitations because they were inconsistent with her lack of treatment for chronic lower back pain. ECF No. 12 at 7-8. In asserting her lack of treatment was due to factors beyond her control, Ms. B. cites a September 2022 disability review report where she described experiencing constant, daily pain but indicated an inability to seek treatment services from neurosurgeons and neurologists due to pandemic-related restrictions. *Id.*, citing Tr. 360. She also points to a March 2023 report from a disability hearing officer noting she was having difficulty finding a primary care doctor. *Id.*, citing Tr. 144. Ms. B states she testified her providers believed her impairments would be managed more effectively with a course of treatment outside the scope of their respective specializations, leaving her with no new treatment options. *Id.* at 8, citing Tr. 72-73. She also states the ALJ disregarded her reports of musculoskeletal pain and stiffness to her endocrinologist on several occasions. *Id.*, citing Tr. 574, 578, 582.

Ms. B. takes issue with the ALJ's determination that Ms. Washington's opinion as to her standing and walking limitations were inconsistent with other examination findings in the record. ECF No. 12 at 8-10. She argues the ALJ failed to explain how "largely unrelated" and "generally irrelevant" findings from other examinations were inconsistent with Ms. Washington's opinion. *Id.* at 9; citing Tr. 26. She contends that while Ms. Washington documented normal range of motion in Ms. B.'s lower extremities, she also specifically noted in her report that the

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 9

1    standing and walking limitations were due to chronic lower back pain, and thus the

2    medical evidence showing normal range of motion does not conflict with her

3    opinion. ECF No. 12 at 9; citing Tr. 546-47.

4         Ms. B. also contests the ALJ's determination that Ms. Washington's opined

5    standing and walking limitations were inconsistent with her own examination

6    findings. ECF No. 12 at 10. She argues that the evidence does not indicate any

7    inconsistencies between her exam findings and the portions of her functional

8    assessment that the ALJ rejected, as Ms. Washington explained that the limitations

9    were due to Ms. B.'s chronic lower back pain and, in some cases, her decreased

10   lumbar flexion. *Id*. Ms. B. argues that the ALJ's analysis was based on an

11   inaccurate review of the record because he incorrectly stated that Ms.

12   Washington's examination indicated no muscle tenderness despite the note in her

13   evaluation report regarding pain with palpation to the lumbar spine. *Id*., citing Tr.

14   546.

15        The Court disagrees that the ALJ discredited Ms. Washington's opinion for

16   improper reasons. First, the ALJ did not simply discredit Ms. Washington's

17   opinion because it was based on Ms. B.'s lack of treatment. Rather, the ALJ

18   weighed Ms. Washington's opinion against the record as a whole, citing other

19   physical examination reports that contradicted the assessed standing and walking

20   limitations and instead reflected a normal range of motion in Ms. B.'s bilateral

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 10

lower extremities with no notations indicating difficulty with ambulation. Tr. 26, citing Tr. 515, 563, 575, 579, 599, 652, 654, 667.

Second, the ALJ discounted Ms. Washington's opinion as inconsistent with the medical record. Tr. 26. This finding is legally sound, *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may reasonably reject doctors' opinions when they are inconsistent with or contradicted by the medical evidence), and substantial evidence supports it, *see, e.g.,* Tr. 515 (March 7, 2022: treatment note with no notation reflecting difficulty with ambulation); Tr. 563 (March 17, 2023: treatment note stating, "Lower Extremity: Normal inspection bilaterally. Full ROM bilaterally. No edema."); Tr. 575, 579, 599, 652 (January 3, 2024, June 26, 2023, February 6, 2024, February 16, 2024, and April 15, 2024: progress notes with no notation reflecting difficulty with ambulation); Tr. 667 (February 6, 2024: Lower Extremity: Normal inspection bilaterally. Full ROM bilaterally. No edema.).

Third, the ALJ determined Ms. Washington's assessed limitations were not well supported by her own examination. Tr. 26. This finding is also legally sound, *see Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (an ALJ may discount a doctor's opinion when it is inconsistent with or unsupported by the doctor's own clinical findings), and substantial evidence supports it, *see* Tr. 543-49 (noting that although back flexion was at 40 degrees and Ms. B. declined to hop, there was normal back range of motion, neck and all other extremities within

normal limits, 5/5 muscle strength, negative straight leg raise, intact sensation, 2+ deep tendon reflexes, no muscle tenderness or trigger points,[3] steady walk and good posture from the waiting room to the exam room, nonantalgic gait on exam, normal tandem walk, and an observed ability to heel and toe walk, stand on either food and bend, squat, sit in a chair calmly without repositioning herself, get on and off the exam table, and don and doff her boots and socks without help).

The ALJ had an adequate basis for rejecting Ms. Washington's assessed standing and walking limitations.

### 2. Emily Ketchel, PMHNP[4]

Ms. Ketchel completed a consultative psychiatric evaluation of Ms. B. on January 26, 2023. Tr. 552-557. Ms. Ketchel opined Ms. B. is incapable of managing funds and is capable of simple and complex tasks, but is not able to sustain concentration and persist at a reasonable pace, including regular attendance and completing work without interruption, and is not able to interact with coworkers, superiors, and the public, and adapt to the usual stresses encountered in

---

[3] As Ms. B. correctly points out, the ALJ stated that Ms. Washington's exam showed no muscle tenderness or trigger points despite the note in her evaluation report regarding pain with palpation to the lumbar spine. ECF No. 12 at 10, citing Tr. 26, 546.

[4] A PMHNP is a psychiatric mental health nurse practitioner.

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 12

the workplace. Tr. 552-57. The ALJ found Ms. Ketchel's opinion was not persuasive. Tr. 27.

Ms. B. argues that the ALJ did not provide any valid reasons for rejecting Ms. Ketchel's opinion and excluding her limitations from his RFC assessment. ECF No. 12 at 10-14. The Court disagrees. The ALJ properly discounted Ms. Ketchel's opinion on two of the same grounds used to discount the standing and walking limitations opined by Ms. Washington. Tr. 27.

First, the ALJ determined Ms. Ketchel's opinion was not strongly supported by her own examination. Tr. 27. As discussed above, this finding is legally sound. *See Tommasetti*, 533 F.3d at 1041. The ALJ referenced Ms. Ketchel's observation that Ms. B. was funny and kind before and after the exam, and cooperative and friendly during the exam. Tr. 552. In his discussion about Ms. B.'s symptom testimony, the ALJ noted Ms. Ketchel reported Ms. B. was appropriately dressed, had good cooperation and effort, fair eye contact, fair interpersonal confidence, unremarkable motor function, normal speech, orientation to 3 spheres, and an ability to recall 3/3 words immediately and after a delay, recall remote memories, digit span 6 forward and 4 backwards, answered fund of knowledge questions correctly, calculated serial numbers, followed a 3-step command, and could think abstractly. Tr. 25-27, citing Tr. 552-57.

Second, the ALJ discounted Ms. Ketchel's opinion as inconsistent with the medical record as a whole. Tr. 27. As discussed above, this finding is also legally

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 13

sound. *See Batson*, 359 F.3d at 1195. The ALJ found the "abundance of medical evidence" reflects generally normal mental signs on examination, including normal appearance, no acute distress, and normal behavior/affect. Tr. 27, citing Tr. 690 (September 16, 2020: normal mood and affect); Tr. 515 (March 7, 2022: normal mood and affect); Tr. 528, 530, 581, 583 (June 28, 2022: no worsening anxiety, alert and oriented, initial exam showed a pleasant woman, no new complaints other than the unintentional weight loss); Tr. 564 (June 5, 2023: normal mood and affect); Tr. 599, 668 (February 6, 2024: normal mood and affect); Tr. 654, 696 (February 16, 2024: no acute distress, cooperative, alert and oriented); Tr. 652, 693 (April 15, 2024: no acute distress, cooperative, alert and oriented). Moreover, the ALJ found the medical record shows no significant mental health complaints to treating medical providers, no significant mention of counseling or mental health medication management, and no recommendations or referrals to counseling or other mental health treatment by medical providers. Tr. 27. The ALJ specifically noted that even under relatively stressful conditions such as emergency room presentation, there are no interactive difficulties noted by providers. Tr. 27, citing Tr. 584-645.

The ALJ had an adequate basis for rejecting Ms. Ketchel's assessed mental health limitations.

### 3. Comparison Point Decision

Ms. B. also argues the ALJ failed to make the appropriate comparison in determining she had medically improved. ECF No. 12 at 14. She contends he failed to discuss how he weighed the new evidence of record against the prior RFC finding and determined which specific changes to her RFC were supported by substantial evidence. *Id*. Ms. B. does not cite any law showing that such a specific comparison is required.

Medical improvement is defined as "any decrease in the medical severity" of a recipient's impairment, 20 C.F.R. § 404.1594(b)(1), and requires a "comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)," *id.* § 404.1594(c)(1). The Commissioner's regulations prescribe a specific baseline for this comparison: an ALJ must "compare the ... medical severity" of the impairment(s) "present at the time of the most recent favorable medical decision"—that is, when the claimant was last found disabled or continued to be disabled—"to the medical severity of that impairment(s)" at the time of the comparison. *Id.* § 404.1594(b)(7).

The Ninth Circuit has determined that making this comparison is straightforward in ordinary termination cases where the ALJ finds a claimant is disabled (or continues to be disabled) in one decision and, in a later decision, finds the claimant has medically improved. *Attmore v. Colvin*, 827 F.3d 872, 875-76 (9th

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 15

Cir. 2016). In those cases, the "most recent favorable medical decision" is an earlier decision, and the severity of the claimant's impairment at the time of that decision provides the relevant baseline for comparison. *Id*. at 876.

Here, Ms. B. references the ALJ's failure to provide a specific explanation of how he concluded that her prior limitation of being unproductive and unable to concentrate for 25% of the workday *due to the effects of physical pain and medication* improved so drastically that she no longer had any degree of limitation in this area. ECF No. 12 at 14 (emphasis added). However, the ALJ, finding that "there had been a decrease in medical severity of the impairments present at the time of the CPD[,]" specifically noted that medical evidence at the CPD showed evidence of left foot drop, difficulty sitting in a chair and arising from a chair, slow gait, limited back range of motion to lateral bending, extension, and flexion, left foot drop, decreased lower extremity strength, and decreased lower extremity sensation. Tr. 22. He found that although Ms. B. endorses ongoing pain since the CPD, including low back pain, recent exam shows loss of a significant amount of weight, normal gait and strength, grossly intact sensation, and normal back range of motion except at flexion. Tr. 22. He explained she also cares for her children, is independent in her activities of daily living, and manages her busy schedules, and concluded "[t]he evidence overall demonstrated a decrease in the medical severity of the CPD impairments." Tr. 22.

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 16

The ALJ engaged in an appropriate comparison in determining Ms. B. had medically improved.

B.    Symptom Testimony

Ms. B. contends that the ALJ improperly discounted her testimony showing that she was unable to work.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks and citation omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 17

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

Here, the ALJ found there was objective medical evidence of an underlying impairment which could reasonably be expected to produce Ms. B.'s alleged symptoms, but that Ms. B.'s statements concerning the intensity, persistence, and limiting effects of her symptoms were inconsistent with the record. Tr. 24.

The ALJ offered several reasons to discount Ms. B.'s testimony, which the Court finds well supported. First, the ALJ found Ms. B.'s daily activities are "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." Tr. 24. The ALJ noted that despite Ms. B.'s allegations of significant physical and mental limitations, she reports taking care of her young children, doing household chores, and being independent in activities of daily living where she drives, shops in stores, prepares meals, and generally manages a

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 18

1    busy schedule. Tr. 24, citing Tr. 357-69. The ALJ noted that Ms. B. reported to one

2    provider that she gets activity "chasing her kids[.]" Tr. 24, citing Tr. 581.

3        An ALJ may consider "whether the claimant engages in daily activities

4    inconsistent with the alleged symptoms." *Lingenfelter v. Astrue*, 504 F.3d 1028,

5    1040 (9th Cir. 2007). Ms. B. contends her ability to complete some basic activities

6    at her own pace, and often with breaks for rest, does not contradict her allegations.

7    ECF No. 12 at 17. However, allegations of disabling pain may be discredited if a

8    claimant is able to spend a substantial part of the day engaged in pursuits involving

9    the performance of physical functions that are transferable to a work setting. *Fair*

10   *v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Even if the claimant experiences

11   some difficulty or pain, his or her daily activities "may be grounds for discrediting

12   the claimant's testimony to the extent that they contradict claims of a totally

13   debilitating impairment." *Molina*, 674 F.3d at 1113.

14       It is not the court's role to second guess an ALJ's reasonable interpretation

15   of a claimant's testimony. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001);

16   *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (affirming an ALJ's

17   decision discounting a claimant's testimony after finding that the claimant "was

18   able to perform various household chores such as cooking, laundry, washing

19   dishes, and shopping"). Here, the ALJ's determination that Ms. B. engaged in daily

20   activities inconsistent with disabling limitations is reasonably supported by

     substantial evidence.

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 19

Next, the ALJ discounted Plaintiff's testimony as inconsistent with other reports of her abilities and limitations. Tr. 24; *see, e.g.,* Tr. 367 (December 8, 2022: in a function report Ms. B stated she could walk for half of a mile and then would have to rest for 10-20 minutes); Tr. 380, 385 (May 12, 2023: in a function report Ms. B. stated she could not stand for more than 30 minutes and was able to walk 9 blocks then would have to lie down for minimum of 60 minutes, but a few pages later reported she could only stand for 45 minutes at a time and was able to walk 9 blocks then would have to rest for 5-15 minutes); Tr. 66 (June 3, 2024: Ms. B. testified that she could only walk 20-25 minutes, and needed to lie down for a couple of hours throughout the day). The ALJ found the medical record does not reflect any complaints to providers or objective medical evidence to explain these inconsistencies, which he determined to undermine the reliability of Ms. B.'s self-report.

Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Inconsistency with the record as a whole is a sufficient basis to reject a claimant's statements. 20 C.F.R. § 416.929(c)(4); Social Security Ruling 16-3p, 2017 WL 5180304, at *5. Therefore, the ALJ did not err by rejecting Ms. B.'s statements as inconsistent with her other reports.

The ALJ also discounted Ms. B.'s testimony as inconsistent with the objective medical evidence, as related to both her physical and mental health

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 20

impairments. Tr. 24-26. The ALJ cited numerous medical reports in making his determination that a limitation to a light exertion level with restrictions on postural activities would account for Ms. B.'s severe physical medically determinable impairments. Tr. 24-25; *see, e.g.,* Tr. 685 (October 2020: lumbar spine report noted age-appropriate multilevel degenerative changes; Tr. 551 (January 2023: lumbar spine x-ray showed no change from a prior July 2011 study, noting stable moderate degenerative disc disease L4-5); Tr. 543-550 (January 2023: consultative medical examination findings showed Ms. B. declined to hop due to back issues, but had normal gait and strength, grossly intact sensation, normal range of motion except for back flexion to 40 degrees, 5/5 strength, normal bulk and tone, no atrophy, negative straight leg raise, 2+ deep tendon reflexes, no muscle tenderness or trigger points,[5] and no noted difficulty rising and sitting from a chair, sitting in a chair without repositioning herself, or getting on and off the exam table).

---

[5] As Ms. B. correctly points out, the ALJ stated that Ms. Washington's exam showed no muscle tenderness or trigger points despite the note in her evaluation report regarding pain with palpation to the lumbar spine. ECF No. 12 at 10, citing Tr. 26, 546.

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 21

1    The ALJ also noted that despite the alleged worsening of Ms. B.'s back

2 pain, she reports only taking over-the-counter medications for pain (Tr. 376), and

3 the medical record shows she has not made any significant musculoskeletal

4 complaints or sought specific treatment for them, other than some complaints of

5 general joint and/or back pain and stiffness. Tr. 25, citing Tr. 582, 671. The ALJ

6 found that although the medical record documents medical visits and complaints

7 for issues like sore throat, gastritis, and management of her non-severe

8 hypothyroidism, physical examination reports from these medical visits do not

9 mention any notable musculoskeletal abnormalities (Tr. 515, 575, 579, 652, 654),

10 or they specifically document normal signs such as full neck range of motion, full

11 upper and lower extremity range of motion, and normal mood and affect. Tr. 25,

12 citing Tr. 563, 599, 667.

13    The ALJ also discussed the mental health record, and cited examples from

14 the record to support his determination that unskilled work, with regular breaks and

15 restrictions on social interactions and workplace changes, sufficiently accounts for

16 Ms. B.'s severe mental impairments. Tr. 26. The ALJ found routine physical

17 examination reports repeatedly document normal signs like alert and oriented

18 presentation, cooperative behavior, normal speech, and normal mood and affect.

19 Tr. 25; citing Tr. 515, 564, 599, 652, 654, 668, 690, 693, 696. The ALJ considered

20 Ms. Ketchel's January 2023 consultative psychiatric examination report which

indicated poor grooming, anxious mood, anxious and tearful affect, emotional and

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 22

easily distracted during the interview, and repeatedly redirected to keep pace of the interview. Tr. 25, citing Tr. 552-57. However, the ALJ notes Ms. Ketchel also reported funny and kind behavior prior to and after the exam, appropriate dress, good cooperation and effort, fair eye contact, fair interpersonal confidence, unremarkable motor function, normal speech, orientation to 3 spheres, and an ability to recall 3/3 words immediately and after a delay, recall remote memories, digit span 6 forward and 4 backwards, answer fund of knowledge questions correctly, calculate serial numbers, follow a 3-step command, and think abstractly. Tr. 25-26, citing Tr. 552-57.

Ms. B. argues that a summary of some objective findings followed by a vague conclusion with no clear explanation or analysis is not a sufficient basis for the ALJ to reject the claimant's allegations. ECF No. 12 at 18. The Court disagrees with Ms. B.'s characterization of the ALJ's decision. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857. While minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, it may not be the only factor. *See Burch*, 400 F.3d at 680.

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 23

Ms. B. again argues the ALJ improperly penalized her limited access to care by rejecting her symptom testimony based on lack of mental health treatment. ECF No. 12 at 18. The Court disagrees. The ALJ relied not only on Ms. B.'s failure to seek mental health treatment, but also on the fact that there are few, if any, mental health complaints during her office visits. The ALJ noted that although Ms. B. reported a history of anxiety/depression in a health history form (Tr. 671), and fatigue to her endocrinologist (Tr. 574, 578), she reported no worsening anxiety (Tr. 528, 530, 581, 583), and made no requests for mental health treatment. Tr. 25. The ALJ noted the medical record does not show any mental health treatment since January 30, 2023, and Ms. B. reported to a consultative examiner in January 2023 that she last saw a counselor about five years prior and was not on any psychiatric medications. Tr. 25, citing Tr. 552-57. The ALJ remarked that while Ms. B. testified that she is not able to get into counseling, the record does not show any referrals from providers or any other indication that counseling was recommended by any provider. Tr. 25.

The ALJ did not commit legal error in rejecting Ms. B.'s symptom testimony.

C.    Final Step

Ms. B. argues that "the vocational testimony she relied on was without evidentiary value because it was provided in response to an incomplete hypothetical." ECF No. 12 at 19. This argument is foreclosed because, as discussed above, the ALJ properly evaluated the medical evidence and reasonably discounted

Ms. B.'s testimony. This restatement of Ms. B.'s argument fails to establish error at step five. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly,

1.   Ms. B.'s Brief, **ECF No. 12**, is **DENIED**.

2.   Defendant's Brief, **ECF No. 14**, is **GRANTED**.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** February 17, 2026.

REBECCA L. PENNELL
United States District Judge

ORDER AFFIRMING THE COMMISSIONER'S DECISION * 25